UNITED STATES DISTRICT COURT
DISTRICT OF NEBRASKA

PHILIP J. INSINGA,

          Plaintiff,

v.

UNITED OF OMAHA LIFE
INSURANCE COMPANY,

          Defendant.

Court File No. _____

**COMPLAINT**
**CLASS ACTION**

**PRELIMINARY STATEMENT**

1.     Guaranteed Investment Contracts ("GICs") are a financial product offered by insurance companies. Investors – in this case retirement plans – enter into a contract with the insurance company promising a return on participants' investments in the product.

2.     Defendant United of Omaha Life Insurance Company ("United of Omaha") operates the United of Omaha Guaranteed Account (the "Guaranteed Account"). Retirement plans (the "plans") in which Plaintiff and the proposed class members are participants and beneficiaries invest in the Guaranteed Account pursuant to a GIC that governs the relationship between the plans and United of Omaha, referred to herein as "the Contract."[1] The Contract was and is an asset of the plans.

3.     The Contract grants United of Omaha discretionary authority to set its own compensation as a service provider to the plans. In addition, the Contract grants United of Omaha discretionary authority to determine the rate of return that will be credited (the "credited rate") to participants in plans that invest in the Guaranteed Account. The Contract does not disclose how the credited rate is determined, does not specify the credited rate, and does not specify a minimum rate of return.

---

[1] A copy of the Contract is attached as Exhibit 1.

1

4. United of Omaha owed fiduciary duties to the plans and plan participants in exercising its discretionary authority under the Contract. As alleged below, United of Omaha breached these fiduciary duties and engaged in transactions prohibited under the Employee Retirement Income Security Act of 1974 (ERISA).

5. Among other things, United of Omaha improperly exercised its discretionary authority to maximize its own compensation and retain large profits rather than crediting the participants and beneficiaries of the plans with appropriate returns. Throughout the relevant time period, United of Omaha invested the retirement assets it received pursuant to the Contract, and retained for itself the difference between the investment earnings on those assets and the interest it chose to credit to the plans, referred to herein as "the margin." United of Omaha retained the margin in addition to service fees it charged the plans, which caused United of Omaha to receive excessive fees incident to its administration of the Contract.

6. As a result of United of Omaha's actions, the plans' assets were diminished. Plaintiff seeks monetary and equitable relief on behalf of the class.

## JURISDICTION

7. Plaintiff brings this action under ERISA §§ 409(a), 502(a)(2) and 502(a)(3), 29 U.S.C. §§ 1109(a), 1132(a)(2), (3). This Court has subject matter jurisdiction over Plaintiff's claims under ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1), and under 28 U.S.C. § 1331 because this action arises under the laws of the United States.

## VENUE

8. Venue lies in the District of Nebraska under ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because Defendant may be found in this District and/or the alleged breaches took place in this District. Venue also is proper under 28 U.S.C. § 1391(b), in that a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this District.

## THE PARTIES AND THE PLANS

9. Plaintiff Philip Insinga was a participant, as defined in ERISA § 3(7), 29 U.S.C. § 1002(7), in the Safe Auto Insurance Company 401(k) Plan. During the relevant time period, Mr.

Insinga directed that the majority of the assets allocated to his account in the plan be invested in the Guaranteed Account. Mr. Insinga resides in Dublin, Ohio.

10. At all relevant times, the Safe Auto Insurance Company 401(k) Plan was an employee pension benefit plan within the meaning of ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A). It was an individual account plan within the meaning of ERISA § 3(34), 29 U.S.C. § 1002(34).

11. Defendant United of Omaha is a wholly-owned subsidiary of Mutual of Omaha Insurance Company ("Mutual of Omaha"). United of Omaha is headquartered in Omaha, Nebraska.

### FACTS

12. Plan participants' contributions to the Guaranteed Account are received by United of Omaha and directed to "Maturity Accounts," which are held as a part of Mutual of Omaha's general assets. Contributions to the Maturity Accounts are credited with interest at the Guaranteed Interest Rate.

13. The so-called Guaranteed Interest Rate is a misnomer. There is no guaranteed minimum rate of return,[2] and Contract sets forth no methodology for determining the Guaranteed Interest Rate. The Guaranteed Interest Rate is simply defined as "[a] rate of interest declared periodically by United." The Contract sets forth no methodology for determining the Guaranteed Interest Rate.

14. United of Omaha is not obligated to maintain the same Guaranteed Interest Rate for any specific period of time. Rather, United of Omaha has discretion to change the interest rate unilaterally at any time. The Contract states: "*At least* once a month, a new Guaranteed Interest Rate will be declared for all Contributions directed to a Maturity Account and received within the given calendar month for the applicable Maturity Account Term." (emphasis added.)

---

[2] The Contract provides that United of Omaha guarantees the **principal** of contributions to the Maturity Accounts and interest earned on those contributions less any charges due under the Contract.

3

Further, the Contract gives United of Omaha the unilateral right to amend the frequency of declaring the Guaranteed Interest Rate, upon 30 days' notice to the plan.

15. Each Maturity Account has a term of five years, and United of Omaha and the plan may agree to establish additional Maturity Accounts after that term. When a Maturity Account reaches the 5-year term, funds are automatically reinvested into the next Maturity Account.

16. United of Omaha charges an administrative fee of 15 basis points on the balance invested in the Guaranteed Account. The administrative fee covers United of Omaha's "general contract expenses" such as distribution, commissions, communications and accounting. The Contract also provides that the administrative fee can cover any subsidy by United of Omaha of recordkeeping or other fees payable to any third party by the plan. United of Omaha has the unilateral right to change the administrative fee at any time upon 30 days' notice to the plan.

17. The administrative fee is in addition to United of Omaha's retention of the margin, the size of which United of Omaha determines as well (by determining the Guaranteed Interest Rate).

18. Under the Contract, United of Omaha reserves the right to limit the maximum amount of contributions to any Maturity Account to $50,000. Contributions exceeding this amount may be invested in a new Maturity Account with the same Maturity Date and a Guaranteed Interest Rate determined by United of Omaha in its sole discretion.

19. United of Omaha restricts the ability of plans to terminate their investment in the Guaranteed Account, by paying out less than the full value of the plan account in the event of Contract termination. In the event of a plan-initiated termination, in most circumstances United of Omaha pays out the account as a single payment reduced by a "Market Value Charge." Further, United of Omaha has the right to delay this payment for up to 180 days from the date of a request to withdraw by a plan. In addition, if the plan terminates the contract before it has been in effect for 5 years, United of Omaha charges the plan a surrender fee.

4

20. Participants are also restricted in their ability to transfer funds in and out of the Guaranteed Account. The Contract provides that any transfer from the Maturity Account to a Competing Fund must be held by the plan trustee for a period of at least 90 days in a non-competing investment option, a mechanism commonly known as an "equity wash." Competing Funds are defined broadly to include any "book value fund which may invest in fixed and/or variable rate guaranteed interest contracts (including synthetic guaranteed interest contracts), bank investment contracts, money market funds, certificates of deposit, etc.," any bond fund with a duration of less than 5 years, or "any other type of fund that has a primary investment objective to preserve principal or which invests primarily in debt instruments."

21. Further, United of Omaha reserves the right to restrict transfers by participants that appear to be engaging in market timing, and where there is an "unusual volume" of participant-directed transfers suggesting an employer-directed withdrawal, United of Omaha can impose a Market Value Charge.

22. These restrictions on contributions, transfers, and terminations protect United of Omaha from investment risk and shift such risk to participants in the Guaranteed Account.

23. United of Omaha retains the right to terminate the contract for any reason upon 60 days' written notice to the plan.

24. United of Omaha also may unilaterally decide not to accept any additional contributions under the Contract for the next year, so long as it gives 60 days' notice to the plan before the beginning of the next Contract year.

25. These contractual rights also protect United of Omaha from investment risk, as United of Omaha can restrict investment or terminate the product if the underlying assets do not match its liabilities.

26. United of Omaha has reduced the Guaranteed Account's credited interest rate during the class period. In the one-year period ending February 28, 2017, the Guaranteed Account's interest rate averaged 0.68%. Over the five years ending February 28, 2017, the Guaranteed Account has paid interest at an average rate of 1.10% per year.

5

27. Discovery will show that during the relevant time period, United of Omaha made and retained millions of dollars annually from ERISA defined contribution retirement plans' investments in the Guaranteed Account, and the amounts credited to the plans were consistently dwarfed by United of Omaha's investment returns. In other words, United of Omaha retained excessive compensation at the expense of plan participants.

28. Plan documents and fee disclosure materials provided to Plaintiff fail to disclose that United of Omaha can and does retain the difference between the credited interest rate it chooses to give retirement plans and its actual investment earnings on the funds it invests on behalf of the plans.

29. The Contract does not guarantee payment of any particular benefit to plans or their participants. Instead, it promises only preservation of principal and an unspecified rate of return, minus fees. Investment risk is borne by the participants because United of Omaha can change the credited interest rate in its sole discretion, restrict participants' and plans' ability to cease investing in the Guaranteed Account (by using, for example, the equity wash and market value charge), and close the product if market conditions are not favorable to United of Omaha. On information and belief, United of Omaha also passed on the costs of its risk mitigation measures – such as the costs of hedges and asset defaults – to participants.

30. ERISA defines a "fiduciary" as anyone who exercises authority or control over the management or disposition of plan assets. 29 U.S.C. § 1002(21)(a).

31. The Contract itself is a plan asset: it is purchased by plans in order to provide income to participants. Nevertheless, United of Omaha diverted and continues to divert earnings to itself.

32. The Contract gives United of Omaha discretionary authority to change the credited interest rate (and to devise the method of determining that rate). Thus, United of Omaha is a fiduciary of the plans with respect to its management and administration of the Contract. As a fiduciary of the plans, United of Omaha must discharge its duties "solely in the interest of the participants and beneficiaries" and "for the exclusive purpose of … providing benefits to

6

participants and beneficiaries; and … defraying reasonable expenses of administering the plan[.]" United of Omaha has breached these fiduciary duties and engaged in prohibited transactions by engaging in the self-interested conduct described herein.

## CLASS ACTION ALLEGATIONS

33. Plaintiff brings this action as a class action pursuant to Rules 23(a) and 23(b)(1) or, in the alternative, 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the following class of similarly situated persons ("the Class"):

> All participants in and beneficiaries of defined contribution plans within the meaning of ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A), who had funds invested in the United of Omaha Guaranteed Account from May 26, 2011 to the conclusion of this action.

34. The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are, at a minimum, thousands of Class members.

35. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among such questions are:

    (a) Whether Defendant is a party in interest with respect to the plans;

    (b) Whether Defendant is a fiduciary of the plans;

    (c) Whether Defendant breached its fiduciary duties in how it set the credited rate and thus determined the amount of its own compensation under the Contract;

    (d) Whether Defendant sets the credited interest rate for its own benefit rather than for the exclusive benefit of plans and participants; and

    (e) Whether Defendant engaged in prohibited transactions with the plans.

36. There are no substantial individual questions among the Class claims on the merits of this action, and Plaintiff is not aware of any conflicts between himself and members of

the proposed Class. Plaintiff will adequately represent the interests of the Class, and has retained competent, experienced, and adequate counsel to represent the Class in this action.

37. Plaintiff's claims are typical of the claims of the members of the proposed Class, as Plaintiff and all other members of the proposed Class were harmed by Defendant's wrongful conduct. Plaintiff is aggrieved by the prohibited transactions and breaches of fiduciary duties he and all other members of the Class have suffered at Defendant's hands, and is intent on seeing such wrongs remedied.

38. Class certification is appropriate under Fed. R. Civ. P. 23(b)(1) because the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for Defendant, and/or because adjudications with respect to individual Class members would as a practical matter be dispositive of the interests of non-party Class members or substantially impair or impede their ability to protect their interests.

39. In the alternative, class certification is also appropriate under Fed. R. Civ. P. 23(b)(3) because common issues of law and fact predominate over questions affecting only individual members of the Class. Moreover, a class action is superior to other available methods for the fair and efficient adjudication of this controversy. Defendant has obtained wrongful profits through overcharges that are, on an individual level, small and difficult to detect, but in the aggregate are an enormous drain on Class members' retirement assets. Individual participants who have invested in the Guaranteed Account, and even most of the plans, have an insufficient stake in the outcome of this matter to devote the substantial resources that would be required to pursue it individually.

40. The Class is readily ascertainable because the names and addresses of the Class members are available from Defendant and/or the plans, and adequate notice can be provided to members of the Class to the extent required by Fed. R. Civ. P. 23.

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

### [Breach of Fiduciary Duty Under ERISA §§ 502(a)(2) and (a)(3), 29 U.S.C. §§ 1132(a)(2) and (a)(3)]

41. Plaintiff incorporates Paragraphs 1-40 as though set forth herein.

42. United of Omaha is a functional fiduciary of the plans as defined by ERISA § 3(21)(A), 29 U.S.C. § 1102(21)(A), because it exercises discretionary authority or discretionary control respecting management of the plans' assets.

43. ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A), requires, *inter alia*, that a plan fiduciary discharge its duties "solely in the interest of the participants and beneficiaries" and "for the exclusive purpose of … providing benefits to participants and beneficiaries; and … defraying reasonable expenses of administering the plan[.]"  This is known as the duty of loyalty.

44. Defendant breached its duty of loyalty under ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1).  Defendant's breaches include but are not limited to the following:  setting the credited interest rate for its own benefit rather than exclusively for the benefit of the plan participants, retaining the margin, and charging excessive fees and/or collecting excessive compensation for its services in providing the Guaranteed Account.

45. ERISA § 409, 29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate, including removal of the fiduciary.

46. ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), permits a plan participant to bring an action for relief under ERISA § 409, 29 U.S.C. § 1109.

47. ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), also permits a plan participant to bring an action to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to enforce the terms of a plan.

48. Defendant has profited from the fiduciary violations alleged herein in an amount to be proven at trial, and Plaintiff is entitled to recover these profits on behalf of the plans.

49. Defendant's actions caused losses to the plans in an amount to be proven at trial, and Plaintiff is entitled to recover these losses on behalf of the plans.

## SECOND CLAIM FOR RELIEF

**[Engaging in Prohibited Transactions Forbidden by ERISA § 406(b), 29 U.S.C. § 1106(b)]**

50. Plaintiff incorporates Paragraphs 1-49 as though set forth herein.

51. United of Omaha is a fiduciary of the plans, as set forth in Paragraphs 29-31 and 42 above.

52. ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1), mandates that a plan fiduciary shall not "deal with the assets of the plan in his own interest or for his own account." ERISA § 406(b)(3), 29 U.S.C. § 1106(b)(3), further mandates that a plan fiduciary shall not "receive any consideration for his own personal account … in connection with a transaction involving the assets of the plan."

53. Defendant engaged in prohibited transactions in violation of ERISA § 406(b), 29 U.S.C. § 1106(b)(1) and (b)(3), by dealing with the Contract in its own interest or for its own account each month in which it sets the crediting rate for its own benefit, and by receiving consideration for its own account each month in connection with transactions involving the Contract, specifically by receiving income from the underlying investments and keeping the margin. Defendant set the credited interest rate for its own benefit and set its own compensation (in the form of the margin).

54. ERISA § 409, 29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or

duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate, including removal of the fiduciary.

55. ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), permits a plan participant to bring a suit for relief under ERISA § 409.

56. ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), permits a plan participant to bring a suit to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to enforce the terms of a plan.

57. Through its prohibited transactions, United of Omaha caused losses to the plans and retained profits in amounts to be proven at trial. These losses and profits are recoverable in this action.

## THIRD CLAIM FOR RELIEF

**[In Defendant's Capacity as a Party In Interest, Engaging in Prohibited Transactions Forbidden by ERISA § 406(a), 29 U.S.C. § 1106(a)]**

58. Plaintiff incorporates Paragraphs 1-57 as though set forth herein.

59. Defendant is a party in interest with respect to the plans. *See* 29 U.S.C. § 1002(14)(A),(B).

60. Pursuant to ERISA § 406(a)(1)(C), 29 U.S.C. § 1106(a)(1)(C), transactions involving the furnishing of services between a party-in-interest and a plan are prohibited. Further, pursuant to ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D), a plan may not engage in a transaction that results in a "transfer to, or use by or for the benefit of a party-in-interest, of any assets of the plan."

61. Each month, United of Omaha provides services to the plans in connection with the Contract by receiving monies from the plans—in the form of new contributions and reinvestment of monies held in Maturity Accounts whose term has expired—and placing them

into the Guaranteed Account, setting the credited rate for monies in that particular Maturity Account, and paying interest to plans for monies held in previously-established Maturity Accounts. By causing United of Omaha, a party in interest, to provide these services to the plans, the plans' fiduciaries violated 29 U.S.C. § 1106(a)(1)(C).

62. In addition, United of Omaha's setting of the credited rate to maximize its own compensation constituted unlawful use of a plan asset (the contract) by or for the benefit of a party in interest.

63. United of Omaha knew or should have known that it was a party in interest, and it knowingly participated in these prohibited transactions by (among other things) receiving contributions to the Guaranteed Account, setting the credited rate, retaining compensation for itself, and paying interest to plans on an ongoing basis.

64. As a result of these prohibited transactions, the plans suffered significant losses and United of Omaha retained windfall profits in amounts to be proven at trial.

65. United of Omaha is subject to liability for such prohibited transactions as a co-fiduciary under 29 U.S.C. § 1105.

66. Alternatively, to the extent that United of Omaha is determined not to be a fiduciary, it is liable for these prohibited transactions under 29 U.S.C. § 1132(a)(3), which provides for "other appropriate equitable relief" to redress "any act or practice" that violates ERISA.

67. All profits that United of Omaha received in connection with the aforementioned prohibited transactions are subject to disgorgement and/or surcharge.

68. Alternatively, United of Omaha's profits from the prohibited transactions are subject to the equitable remedy of constructive trust and/or equitable lien, as these monies are in the possession of United of Omaha and are traceable to specific transactions that took place on specific dates. It would be unjust and inequitable for United of Omaha to retain these monies where it engaged in prohibited transactions and received excessive compensation in violation of ERISA.

## PRAYER FOR RELIEF

69. Wherefore, Plaintiff prays for relief as follows:

A. A determination that this action may proceed as a class action under Rule 23(b)(1), or in the alternative, Rule 23(b)(3) of the Federal Rules of Civil Procedure;

B. Designation of Plaintiff as the Class Representative and designation of Plaintiffs' counsel as Class Counsel;

C. A declaration that Defendant breached its fiduciary duties under ERISA;

D. A declaration that Defendant violated 29 U.S.C. § 1106 by engaging in prohibited transactions;

E. An order compelling Defendant to personally make good to the plans all losses that the plans incurred as a result of the breaches of fiduciary duties and prohibited transactions described above, and to restore the Plan to the position it would have been in but for this unlawful conduct;

F. An accounting for profits earned by Defendant and a subsequent order requiring Defendants to disgorge all profits received from, or in respect of, the plans;

G. An order granting equitable restitution and other appropriate equitable monetary relief against Defendant including, but not limited to, imposition of a constructive trust on all plan assets transferred to Defendant as a result of Defendant's unlawful conduct in violation of ERISA or a surcharge against Defendant to prevent its unjust enrichment and to compensate the class for Defendant's violations of ERISA;

H. An order enjoining Defendant from any further violations of ERISA fiduciary responsibilities, obligations, and duties;

I. Other equitable relief to redress Defendant's illegal practices and to enforce the provisions of ERISA as may be appropriate;

J. An award of pre-judgment interest;

K. An award of attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g) and/or the common fund doctrine;

L. An award of such other and further relief as the Court deems equitable and just.

Dated: May 26, 2017　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　By:　*/s/ Pamela A. Car*
　　　　　　　　　　　　　　　Pamela A. Car, NE Bar No. #18770
　　　　　　　　　　　　　　　CAR & REINBRECHT, P.C.
　　　　　　　　　　　　　　　8720 Frederick Street #105
　　　　　　　　　　　　　　　Omaha, NE 68124
　　　　　　　　　　　　　　　Telephone: (402) 391-8484
　　　　　　　　　　　　　　　Facsimile:  (402) 391-1103
　　　　　　　　　　　　　　　pacar@cox.net

　　　　　　　　　　　　　　　Todd F. Jackson, CA Bar No. 202598*
　　　　　　　　　　　　　　　Nina Wasow, CA Bar No. 242047*
　　　　　　　　　　　　　　　　　**pro hac vice applications forthcoming*
　　　　　　　　　　　　　　　FEINBERG, JACKSON, WORTHMAN & WASOW LLP
　　　　　　　　　　　　　　　383 4th Street, Suite 201
　　　　　　　　　　　　　　　Oakland, California 94607
　　　　　　　　　　　　　　　Telephone: (510) 269-7998
　　　　　　　　　　　　　　　Facsimile: (510) 269-7994
　　　　　　　　　　　　　　　todd@feinbergjackson.com
　　　　　　　　　　　　　　　nina@feinbergjackson.com

　　　　　　　　　　　　　　　Kai Richter, MN Bar No. 0296545*
　　　　　　　　　　　　　　　Carl Engstrom, MN Bar No. 0396298*
　　　　　　　　　　　　　　　　　* *pro hac vice* applications forthcoming
　　　　　　　　　　　　　　　NICHOLS KASTER
　　　　　　　　　　　　　　　4600 IDS Center, 80 S. 8th St.
　　　　　　　　　　　　　　　Minneapolis, Minnesota 55402
　　　　　　　　　　　　　　　Telephone: (877) 448-0492
　　　　　　　　　　　　　　　Facsimile: (612) 338-4878
　　　　　　　　　　　　　　　krichter@nka.com
　　　　　　　　　　　　　　　cengstrom@nka.com

　　　　　　　　　　　　　　　*Attorneys for Plaintiff*